Corporation, et al., appellant. Mr. Fonachere for the appellant, Mr. Clark for the affiliate. Mr. Fonachere for the affiliate. Good morning, Your Honor. Good morning. To please the Court, my name is John Fonachere and I represent Petra International Banking Corporation, who is the appellant in this case and the counter plaintiff below. We are appealing from two orders of the District Court. The summary judgment order ended against PIBC was on the basis of the statute of limitations. The basis of the statute was that the instrument on which PIBC was suing, the guarantee and the note, were non-negotiable. Of course, we were only claiming that the note had to be negotiable. But when the Court determined that the note was not negotiable because it had a variable rate of interest, then the extended statute under the UCC... You're going a little backwards in this case, aren't you, by starting with that issue? I'll start whatever issue you want, Your Honor. No, but my point is we never reached that question if we conclude the guarantee only covered the indebtedness at the time of the guarantee, the 3.8. The original guarantee was 3.7. Sorry, I made it another thousand. It's okay. If the guarantee only covered the original 3.7, then we don't even reach the negotiable instrument question. That's right, Your Honor. You don't. Now, the key to that argument, if I understand correctly, is your assertion is the word owed refers only retrospectively to amounts that had been previously advanced by Petra to the company. Would you mind if I refer to the company as the company rather than that ridiculous acronym that you use? There's a bank and a company. It's real easy. We can just talk about the bank and the company rather than any acronym, can't we? Sure. Yeah, it'd be helpful. Okay. Now, so what's the answer to my question? Your key is the word owed, right? Well, we make two arguments, Your Honor. I don't know if that's one. The owed is an important point. Yes, yes, it is, Your Honor. Do you think the word owed refers only to, because it's in the past tense, it refers only to past one? You're right, Your Honor. There's a problem with your argument, isn't there? What is it? On page 14 of your brief, you say this interpretation of owed is further buttressed by the language in section 10 of the guarantee that any indebtedness of bar now or hereafter owed to or held by guarantors is hereby subordinated. By your own admission, therefore, the word owed is used for future as well as past. Only with the word hereafter, Your Honor. You only get there if you ignore the word hereafter. Well, but it doesn't say now or hereafter loan. It said now or hereafter owed. So, therefore, the word owed is used for future as well as past. I don't think it is, Your Honor. It certainly is. I mean, I don't see how you can argue against that. I know you would like to emphasize the hereafter, but I'm just looking at grammar. Well, there are other... It doesn't say hereafter granted, hereafter loan. It said hereafter owed. But the use of the different phraseology was to get across the idea in this guarantee that owed alone meant past. And it makes sense, Your Honor, because at the time they did this new loan, there was already $5 million on the books that the company owed the bank. And so this provision that you're looking at and the sentence in paragraph 1 of the guarantee refers to the fact that the guarantee is only going to apply to this and, if anything else is loaned, to whatever else is loaned. See, the last sentence says it is understood and agreed that this guarantee is limited to the payment of the note and the performance of the obligations under the loan documents and shall not extend to any other sums or obligations owed by the borrower to the lender. But at the time this note was done, there was already a relationship, a prior relationship between the company and the bank, which... I understand your argument. And, in fact, if on the... as one of the exhibits to this security agreement that was prepared at the same time, they included as an exhibit the prior amount that was owed and not covered. You know, and I think in the end, I think the district court recognized this argument. This issue came up on the motion to dismiss. And then when the district court noticed us that he was going to enter a summary judgment, he gave us a time to respond. So we addressed that argument in our papers as well. And if you look at what he says in his opinion, page 26, he says, referring to those arguments we made, but the court need not resolve factual disputes regarding the party's understanding of the guarantee's terms because there is an unambiguous provision. And then he went to the variable rate provision. So I think that even the court, the district court recognized there are all kinds of, at a minimum, disputed issues of material fact on how to interpret this, particularly in light of paragraph 3 of this agreement as well. But if we conclude the guarantee can only reasonably be read the way the appellee asserts, that's the end of the variable rate question, right? I think that's right, Your Honor. So then you just go to the seal issue. That's right, Your Honor. The independent issue. That's right, Your Honor. And that is an argument over what Murray holds. That is an argument over Murray holds, and it's also an argument about collateral estoppel, Your Honor. I'm sorry? It's also an argument about estoppel. Estoppel? Estoppel. Why? Because in the whereas clause to the guarantee, the bank indicated that it wasn't going to loan any money unless the guarantee was sealed. You liked Judge Williams' question at the oral argument, didn't you? Fortunately, I was sitting down for that question. But you liked it. I did like it. But it didn't carry the court. Well, the court didn't rule on that issue. No, that's probably why you've got to remand on that, because there must have been a dispute on that question. But if one concludes that Murray is on the side of your opponent, that's the end of your case then. That's the end of the seal case. And if you rule about on the guarantee. That's right, Your Honor. But I think... Sorry. You go ahead. I didn't want to interrupt you. Go ahead. All right. Oh. Did you have more to say? I'll defer to the presiding judge. You don't have to answer me. I'm sorry. Did someone ask a question? My hearing's not all that good. Oh, I'm sorry. I was just... I didn't want to interrupt. I interrupted your answer to Judge Silberman, and I didn't want to do that. I'm sorry. Did you have anything more to say about that? I think... About Estoppel. That was the issue. Right. No, there's one other thing I want to say about that, and that is that there's also testimony in the record. Do you find that this is ambiguous in any way? The only testimony by way of declaration in the record is by the bank manager and an expert we put on, both of whom indicated that this guarantee applied also to future funds. So did you say I was out of stock, Your Honor? Yeah. I want to go back to the question about... I mean, the alternative way to look at this is you've started, right? That is, whether this note was negotiable. That's right, Your Honor. Isn't the problem... Don't you have a real problem because, as I understand the case law, the only case law about the state of D.C. law at the time that this was negotiated, the only case law held that variable rate instruments were not negotiable, and D.C. didn't revise its laws to match the change in the commercial code until later? I mean, that's a big problem for you, isn't it? I think that is a problem that needs to be addressed, and that's why we tried to do it in our briefs. Yeah. To be fair about that issue... Do you agree with me that the only case law about the status of D.C. law at the time doesn't help you a bit? It all says they're non-negotiable, right? There was one case, but I think that was Dickey, Your Honor. Right. I'm talking about Holdings. Right. But I think on the issue of retroactivity, I think this clearly... If that was an issue that had to be decided, I think it should have been decided in Octavia, Your Honor. I'm at a stop. Can I continue? Okay. Anything else? No questions. No? Okay, thank you. Thank you, Your Honor. If it pleases the Court, my name is David Clark, and I'm here on behalf of the appellee. The guarantee that my client signed more than 28 years ago was a simple contract under the law of the District of Columbia. As this Court stated in the first appeal, the cause of action to enforce that started to run in 1987 when the company declared bankruptcy. Because it was a simple contract, it was governed by a three-year statute of limitations, which meant that the bank had three years to do one of three things. Either it could sue my client on the guarantee, it could ask him to sign a tolling agreement, or it could ask him to sign a new guarantee. It did none of those three things, and as a result, in 1990, its right to enforce the guarantee expired. But you don't disagree that if the negotiability argument goes against you, then the statute of limits doesn't go in your favor, either? I do, Your Honor, because I don't. Even the negotiability argument depends ultimately on there being a partial payment on the guarantee as late as 1997. That's a factual matter. Well, Your Honor, in the counterclaim, it was alleged that that payment took place in October of 1997. But then, as you know, Judge Lamberth ultimately entered summary judgment as well against both parties after giving them an ample opportunity to put forward any evidence they had. And the affidavit that they put forward from the manager of the bank does not state what the date of that payment was. And we think it's quite notable that even though that date... Is that an issue before the court of appeals now? Do we decide on that issue? I mean, the trial judge didn't reach it, but I believe the appellate court is free to affirm on any basis. On a factual determination? Well, it's not a factual determination. On summary judgment, the question is, what is the evidence that's in the record? And there was no evidence in the affidavit as to the date of that payment. Now, having said that, I think it's quite clear that this was not a negotiable instrument. And I think, Judge Silberman, you very much put your finger on it. I think ultimately the bank's argument puts much more weight than it will bear on the past tense of that word, owed. And not only is it too much weight for the reasons you pointed out, which is the word owed is used elsewhere to talk about future debts, but you have to read that whole sentence. And that sentence really has two entirely different functions. This is on page 156 of the record. The first half of the sentence is an affirmative statement of what the guarantee is limited to. And then the second half of the sentence is a carve-out, if you will, that tells you some things it doesn't apply to. And regardless of whether the carve-out extends to future amounts loaned or not, the first half of the sentence is absolutely fatal to their position, in our view, which is it is understood and agreed that this guarantee is limited to the payment of the note, defined term, and the performance of the obligations under the loan documents, defined term. And note is defined on this very page as the piece of paper of even date herewith that evidences the loan of $3.7 million, period. It doesn't say an amendment's in the future. And they realize that's a problem because they then try to point you to a definition in a different document that did include that. But to our mind, that really just nails the point home because what it shows is, is that the draftsman who drafted these documents knew full well how to refer to amendments when that's what he wanted to do. And he does not do that here. What about paragraph 3? Your Honor, paragraph 3 and 4 solve what you might call the Rowlinson problem. What paragraph? What problem? The Rowlinson problem. I'm referring to United States versus Rowlinson, which was a case that the court referred to in the first opinion. What 3 and then 4 as well say is that as guarantor, I'm giving you permission to go ahead and modify the arrangement with the plaintiff, with the company however you wish. And if you do that, it's not going to let me off the hook. Now, that's an answer to the argument that was made in Rowlinson. You had a guarantor and you had a company. And for some period of years, the bank kept giving extensions to the company and giving it more time and forbearance. And then ultimately, after any number of years, it sued the guarantor. And the guarantor said, whoa, wait a minute. When you did all of that, giving all of that forbearance to the real borrower, were you letting me off the hook? And in Rowlinson, this court looked at language very similar to 3 and 4 and said that, no, that's the answer to that. You gave the lender permission to do this. So 3 and 4 accomplished that. And so that we concede that the original $3.7 million, Mr. Ferrucchi was not let off the hook by subsequent modifications. But there's no language in 3 or 4, we don't think, that can fairly be read to say, but if you choose to lend more money to the same borrower, we are automatically on the hook for that, without you coming back to ask us to sign another guarantee. I think you make a very good point. My ask of the question is a little puzzling. When this case came to the Court of Appeals before, it was remanded back for what purpose? Your Honor, we believe it was remanded for a very narrow purpose in that it escaped those panels ultimately. Why didn't you argue the law the case indicates that it was inappropriate to extend the remand, as the plaintiffs have, to an entirely new theory? Well, we certainly argued to Judge Lamberth that that was the case. But you didn't argue it here, so it's waived. I had that same reaction that Judge Silverman did. Not surprising. But didn't this enter the case through an amended counterclaim that the Court accepted? It did. The judge exercised his discretion, in our view, to go outside the channel that this Court had set. Right. And you're not arguing that was an abuse of discretion? You could have appealed that. We could have. We felt that his decision was so correct on so many different grounds that it was really not necessary or appropriate for us to be here disagreeing with anything he did. But, yes, I do believe that they got a second bite at the apple that this Court did not intend when it sent the case back the first time. It sent the case back, in our view, to plead and prove the existence of a novation, a new contract supported by separate consideration. There was no such thing. Which of your arguments do you think is the strongest for affirmance, if we were going to affirm? Is it the one you and Judge Silverman have just been talking about, about the clarity of the note, or is it the non-negotiable, which is it? I certainly believe we're correct on both of them. I think the argument based on the text of the agreement is simpler and more straightforward. I think you need to look at a broader range of materials. I mean, I will address that other point. I think you're correct that, at best, the law was unsettled around the country at the time this was done. But was it unsettled in the district? Not in the district. In the district. And I do apologize for counting Judge Keel as three different judges. I realize now he's just one judge. Yeah, he's just one judge. But he does all the work in the district. He's the equivalent of three. I know he does. And I do apologize for that factual error. But the fact is, is that the law in the District of Columbia, and frankly it still is today in the sense that after the amendment, I think he suggested, at least in that footnote in a later opinion, that he thought it would not be applied retroactively. And I think the comparison to Maryland, which D.C. does look to sometimes in the absence of D.C. authority, is very telling because the appellant themselves brought it up. What happened there is that the General Assembly of Maryland adopted the UCC change. Judge Hargrove then ruled it was not retroactive. They are very critical of that decision, but that's what he said. And then the General Assembly of Maryland came back a second time and essentially overruled Judge Hargrove and held it is retroactive and said that in so many words. And under the test that applies in the District of Columbia, where there is a real strong presumption against retroactivity when the statute is silent, it requires that sort of compelling evidence. And what they have adduced, which is you can find statements among the people who drafted the UCC change that they thought it was consistent with past law, falls far short from meeting the Holstanger, I think it is, test in the District of Columbia for applying the statute retroactively. So ultimately I think we prevail on either prong, but as Judge Silberman pointed out right off the bat, the appellant has to convince you on both of them in order for it to make a difference. Can I just ask about the first one really quickly, which is under the paragraph one on page 156, the critical language you focus on that says that the guarantees limited to the payment of the note and the performance of the obligations under the loan documents and shall not extend to any other sums or obligations owed by the borrower to the lender. So why doesn't that reference to other sums or obligations owed refer to other sums or obligations that aren't within the four corners of this, that there are other things? In other words, it's not talking about other sums owed pursuant to this arrangement. It's other sums that are already owed. Well, that is one of the things it refers to. We think it was also intended to refer to amounts that might hereafter be owed. But in any event, the first half of that sentence makes it very clear that whether the carve-out is that broad or not, the basic statement of what's being guaranteed is limited to those defined terms. And if you go through the definitions of note and loan documents, they just keep coming back to even date herewith $3.7 million. And ultimately, the only sentence anywhere in any of these documents where my client guaranteed anything is the first sentence of paragraph one. And again, it is tied very much to the defined terms. That's your definitions argument on the defined definition? They all come back to a loan of $3.7 million. And then it refers to documents of even date herewith that advance and secure that debt or that evidence that debt. And, you know, again, there is a definition of note in another document that is much broader than that, that includes amendments, so the person who drafted this clearly knew how to do that. Let me real quickly just turn to the under seal point. Murray is the controlling case. There is no case that's cited by the appellants in which anybody has ever been deemed to have sealed a document unless there was an attestation right above the signatures that said the undersigned hereby execute and seal, and somebody at least sealed it. The farthest the D.C. court has ever gone is to say that if there's an attestation like that and the first party who signs does it with a seal, we will infer that the party who then signed below that also meant for it to be a sealed document. But Murray, there was an attestation. There was a very clear statement at the top of the very page that had the signature lines that said the undersigned are signing this under seal. And yet neither of them wrote the word seal next to their signature or stamped it or did anything. And Murray, despite that very clear evidence of intent, said that's not a sealed document because there's nothing down below that follows up the attestation. This case is Murray-like. It doesn't even get as far as Murray because here there is no attestation clause. There is a statement of what the lender's intent was, perhaps, back in the whereas's, though I would question if their intent was it to be sealed, how come the person who drafted it didn't put an attestation above the signature lines? But in any event, there is not the slightest evidence in this document that, in fact, the guarantor was delivering a sealed document. And if it really was the key to their intent that they not make the loan without that, they shouldn't have closed the loan. And there's no estoppel here because nobody was misled. All you have to do is look at the last page of the guarantee. It's not under seal. There's no attestation and there's no seal. So nobody was misled that would give rise to an estoppel. So unless the Court has any other questions, that would be my presentation. Okay, thank you. Thank you very much, Your Honor. Counsel, you had time left, right? Okay, go ahead. Your Honor, I just want to make two or three really quick points. I'll talk to you about the second sentence. But, of course, your opponents, a stronger argument is the first sentence of the guarantee. One, it is understood and agreed this guarantee is limited to the payment of the note and the performance of the obligations under the loan documents. What about that? Your Honor, my opponent is arguing to look at this in a vacuum. This guarantee was given as part of a single transaction where there are two other documents. And I think that the common law of contracts, especially when there's integrated documents, is that you read them all together. Well, even if you do so, note and loan are defined in this document. I think that's just shorthand, Your Honor, so you don't have to keep on saying what the amount of money is. So we should not consider the definition in this document because it's shorthand. No, I think you should consider note in the context of the entire transaction. This document and the others. The definition of note in this document should not control. It's only shorthand. The definition of note, Your Honor, I think is given in another document. Well, it's given here, too. I don't see that, Your Honor. Sorry. Am I forgetting that? Isn't note and loan defined in this document? No. Right. Be evidenced by a promissory note of even date herewith. Note. It isn't defined? I just read what it was. I don't see it defined anyplace else. Well, I'll have to ask counsel when you sit down. I thought I remembered it was defined. No, it's defined in the credit facility agreement that was made the same date as this and the same date as the promissory note. All three documents came out of a single transaction, and so I think they ought to be read together, Your Honor. But, you know, in any event, the only other point I wanted to make about what this document covers is at 287 of the record is an exhibit to the facility agreement that indicates what the prior indebtedness is. And the last point I want to make is on paragraph 3. Let me ask one other question with respect to the guarantee language of paragraph 1. Your argument is that language should be read to include future sums lent on the principal sums. So if there was a sum of $100 million lent by the bank to the company, that would be covered by the guarantee. If there was an amendment to the note, which there aren't. So if there was $100 million lent by the bank to the company, that would be subject to the guarantee. The guarantee would cover that. Yes, provided there was a written amendment to the note, which... I don't understand. Why does there have to be a written amendment to the note? Because the money that we say is covered by this note is contained in 12 amendments to it that are in writing and signed. Okay, let's assume there is a written amendment to the note. Okay. And so if there's $100 million in it, the guarantee would cover that. Yes, Your Honor, because of paragraph 3. Yeah, now go on to paragraph 3. What's your reaction to what counsel said about paragraph 3 when I asked him about it? Your Honor, I think if you read paragraph 3 the way my brother wants you to read it, you don't need paragraph 4. It does the same thing. But I want to stress, this isn't a Rawlinson problem. Rawlinson is right on point on paragraph 3. Language almost identical to this language in the Rawlinson case was quoted by the court there. In the context of saying that the lender and the bank could change the amount of the loan based on this authority, and it would not trigger the statute of limitations. So I think Rawlinson is right on point, but it goes that way. All right. Thank you, Your Honor. All right, thank you. Wait a minute, I have one more question. Hold on, excuse me. Go ahead. Your response to the $100 million hypothetical is that this language would apply in any other agreement. We should interpret it the same way. Is that correct? If another case came up, we should interpret this language exactly the way you say it, right? No matter what bank we're talking about and what bar we're talking about. Yeah. Is that correct? Yes. So that any guarantor would be hit the same way you're arguing this guarantor is, right? If he agreed to it. This language. This language, the language that's in the credit facility agreement. Well, the problem with that argument is that down below, your expert witness said this language should be interpreted specially in this situation because your adversary in this case controlled the corporation. Yes. But your answer to my question would be it would be the same whether the guarantor controlled the corporation or not. So a guarantor with this language would be stuck with $100 million added no matter whether or not he or she had control. Your Honor. Is that correct? If he signed the same document. Okay. So the controlling aspect, which you relied on down below, is it Mr. Holcomb, the witness, is irrelevant? No, he didn't say it only applies here. He said it especially applies here. Okay. Thank you. Did you have another question? Your Honor, you have to read this with all the other documents that are part of the same transaction. Okay. We got it. Thank you. Do you want to? Sure. Yeah, go ahead. Yeah, I thought the definition was in the document. I can't. My eyes are getting me difficulty and I can't read this. No, no. I'll use a magnifying glass. That's what I thought. In the first paragraph, there is a definition of the word no. Oh, yes. Here it is. I've got it. I thought I had it earlier. Thank you. Thank you. Okay. Thank you both.
judges: Tatel, Srinivasan, Silberman